THE CITY OF SALEM.

(*District Court, D. Oregon.* May 14, 1889.)

SHIPPING—CARRIAGE OF PASSENGERS—PENALTY FOR EXCESS.
    The regulation contained in section 4465 of the Revised Statutes, forbidding a steam-boat to carry more passengers than are authorized by the local inspectors, *held,* applicable to such boat, engaged in carrying passengers on a navigable water of the United States, between ports of the same state only.
(*Syllabus by the Court.*)

In Admiralty; A. F. Reed, libelant.
*W. Scott Beebe,* for libelant.
*C. J. Macdougall,* for claimant.

DEADY, J. This suit is brought to recover sundry penalties, alleged to have been incurred by the steam-boat City of Salem and her owner, Robert Thompson, in carrying more passengers on the Wallamet river, between Portland and Clinton & McCoy's base-ball grounds, than she was authorized to by law.

The case was before the court on an exception to the libel, to the effect that the transportation of the passengers in question was wholly within the state, and therefore not within the power of congress to regulate commerce.

The exception was overruled on the ground that the regulation contained in title 52 of the Revised Statutes, concerning the number of passengers that may be carried on a vessel propelled in whole or in part by steam, while navigating any of the waters of the United States, is applicable to such vessel when engaged in carrying passengers on such water, even between ports of the same state, as a means of maintaining the safety and security of the same, considered as a highway of foreign and interstate commerce. 37 Fed. Rep. 846.

The case has since been heard on the libel, answer, and testimony, from which it appears—

That the City of Salem is a steam-boat of 456.65 gross tons burden, and on March 6, 1888, was licensed to navigate the Wallamet river for one year, carrying not more than 60 passengers; that on July 4, 1888, she was permitted by the local inspectors to carry an excursion party from Portland to the base-ball grounds aforesaid, a distance of two miles, and return, of not more than 400 in number; and that on said day she did carry on a return-trip from said grounds to Portland, not less than 723 passengers, or 323 more than she was authorized to carry.

On the hearing, testimony was introduced by the claimant to the effect that the overloading of the City of Salem could not, and did not, in the opinion of the witnesses, affect the safety or security of the river as a highway for interstate commerce.

However this may be, I adhere to the ruling made on the exception to the libel, that the act of carrying this excess of passengers, being plainly contrary to a regulation of commerce prescribed by congress, which, in the deliberate judgment of that body, is necessary to maintain the safety and security of the river as a highway of interstate commerce, will not be held legal by me, sitting in this court, on the ground of unconstitutionality of the regulation.

Since writing the opinion on the exception to the libel, I have been favored with the opinion of Mr. Justice HOFFMAN in the case of U. S. v. The Frank Sylvia, 37 Fed. Rep. 155. So far as this question is concerned, the case is on all fours with this. In disposing of it, this able and experienced jurist said:

"I do not feel called upon, nor hardly at liberty, to consider the very important question raised at the bar as to the constitutional right of congress to require the inspection of steamers, or in any way regulate the use of vessels employed on the navigable waters of the United States, but not engaged in foreign or interstate commerce. The validity of the laws regulating the use,

equipment, and navigation of vessels used on the navigable waters of the United States, as well as those engaged in foreign or interstate commerce, has long and almost universally been acquiesced in. They are, in their object and effect, salutary, and in some particulars indispensable, to the safety of the foreign and interstate commerce, which congress has the unquestioned right to regulate, and the effect of a decision adverse to their validity would be so momentous and far-reaching that I consider it to be my duty, as district judge of the United States, to assume their constitutionality, and to leave the question of their validity, in whole or in part, under the constitution, to be passed upon by a higher tribunal."

The finding of the court will be, that penalties amounting in the aggregate to the sum of $3,230 have been incurred by the owner of said steam-boat for the causes stated in the libel herein, as amended, which, together with the costs of this suit, are a lien thereon from the date hereof; and, unless paid within 10 days, execution may issue to collect the same.